## FELDMAN, Respondent, v. KIEFER, Appellant.

**St. Louis Court of Appeals, May 11, 1909.**

1. **DAMAGES: Fraudulent Representation: Prima-Facie Case.**
In an action for damages alleged to have been caused to the
plaintiff by fraudulent representations of the defendant whereby
the executors of a will were induced to delay the payment to
the plaintiff of a legacy to which he was entitled, the evidence
is examined and it is held there was nothing to show liability
on the part of the defendant.

2. **PRACTICE: Counterclaim: Failure to Submit to the Jury.**
Where the trial court submitted a case to the jury, ignoring
a counterclaim which had been filed in the case so that there
was no finding upon it, the error was fatal.

Appeal from Scotland Circuit Court.—*Hon. Chas. D.
Stewart*, Judge.

REVERSED AND REMANDED.

*E. R. McKee, J. W. Waters* and *J. M. Jayne* for appellant.

*Smoot & Smoot* for respondent.

STATEMENT.—This action is in the nature of trespass on the case for alleged fraudulent representations whereby the executors of the will of Augusta Feldman, deceased, have been induced to delay payment of a legacy to plaintiff. The petition states these facts: Plaintiff Henry Feldman, was one of the heirs at law of another Henry Feldman, who resided in Van Buren county, Iowa, and died there in 1899. Plaintiff was under the impression said relative died intestate and plaintiff would inherit a portion of the estate, in which defendant was interested, too. Defendant, who is plain-

tiff's nephew, came to the latter and presented a paper to be signed, reading it to plaintiff as though it purported to be a contract by which plaintiff agreed to pay part of the expense to be incurred by defendant in looking after their property interests; further representing to plaintiff the contract had to be signed in duplicate. Plaintiff was unable to write and directed his wife to sign his name to said papers, which turned out to be not duplicate contracts, but instead a contract to pay defendant's expenses and one to give defendant half of plaintiff's interest in the estate, for procuring it. Plaintiff learned later said relative had bequeathed all his property to his wife Augusta Feldman, who afterwards made a will, bequeathing plaintiff five or six thousand dollars of what had been willed to her by her deceased husband, and died leaving plaintiff a legatee. Defendant knew all these facts, and afterwards asserted the legacy bequeathed by Augusta Feldman to plaintiff was induced by the efforts of defendant and his influence with said Augusta, exerted pursuant to the contracts aforesaid between plaintiff and defendant; that defendant represented plaintiff would not have obtained anything had it not been for defendant's work and claimed he was entitled to one-half of what said Augusta Feldman had bequeathed to plaintiff; by so falsely representing he induced plaintiff to sign a stipulation submitting to arbitrators the question of what defendant should receive under said contract out of the bequest of said Augusta to plaintiff; said stipulation also provided the award of the arbitrators should be entered as a judgment in the circuit court of Scotland county; defendant testified before the arbitrators that he had procured said Augusta to make a will in favor of plaintiff, and had it not been for defendant's efforts plaintiff would have procured nothing out of the estate; the arbitrators, believing defendant's testimony, made an award of twenty-five per cent of the money willed to plaintiff and said representations were wholly false and

fraudulent and the award was procured by fraud and deceit; afterwards defendant presented a claim to the executors of the estate of Augusta Feldman and notified them not to pay plaintiff what he was entitled to under the will, asserting defendant was entitled to $1,250 out of said estate; thereupon the executors refused to pay plaintiff his money; the award of the arbitrators never was entered as a judgment in the circuit court of Scotland county; to procure payment of the funds to which he was entitled from the estate of Augusta Feldman, plaintiff had been compelled to employ an attorney at the cost of three hundred dollars, had incurred traveling expenses to the amount of fifty dollars, had lost twenty-five days of the value of fifty dollars and two years interest on $1,250, all of the damages amounting to $550, and all suffered from the deceit and fraud of defendant; wherefore plaintiff prayed judgment for the total sum. The answer denied the allegations of fraud, misrepresentation and deceit in the petition, denied plaintiff was ignorant of the contracts with defendant when he signed them, denied the award rendered by the arbitrators was induced by fraud and was void, and denied defendant prevented the executors of Augusta Feldman from paying any money to plaintiff. After these sweeping denials of the averments of the petition, the answer set up a counterclaim in which the contract between the parties submitting to arbitration the question of what defendant should be paid for his services in connection with plaintiff's interest in the estate of Henry Feldman and Augusta Feldman, deceased, was pleaded. Defendant averred the agreement to submit the dispute to arbitrators left to the latter all matters concerning the contracts between plaintiff and defendant, all other controversies which had arisen between them since the execution of the contracts, bound the parties faithfully to perform and abide the award of the arbitrators in the premises, and further provided judgment might be rendered on the award of the arbi-

trators in the circuit court of Scotland county; the arbitrators named in the stipulation accepted the duty imposed on them, heard all the evidence produced by both parties and after fully considering the matter, found and awarded defendant was entitled to twenty-five per cent of the money realized by plaintiff from the estate of Augusta Feldman, as heir and distributee, which award was reduced to writing and signed and sworn to by the arbitrators. The answer then set out the award and averred no judgment had been rendered on it by the circuit court, because the amount due defendant could not be fixed until plaintiff had received his portion of the Feldman estate, which he did not receive in time to have judgment entered, but it since had been ascertained his distributive share of said estate was $5,000, and by the terms of the award there was due defendant $1,250 for which he prayed judgment. The reply denied the allegations of new matter in the answer and reiterated those of fraud and deceit made in the petition.

The evidence disclosed that plaintiff and defendant entered into two contracts in writing, which, on their faces, purported to refer to the estate of Henry Feldman, deceased, of Iowa, of whom plaintiff, defendant and other persons in Missouri, were heirs at law. By one of those instruments plaintiff agreed to pay his pro rata part of the expense incurred in collecting his interest in said estate, and by the other agreed to give defendant for the services the latter might render in collecting plaintiff's interest therein, one-half of all moneys collected, and if notes and mortgages were taken in settlement of plaintiff's interest, then one-half of said notes and mortgages. Testimony was given for plaintiff, who cannot read writing, that he caused his signature to be appended by his wife to the second contract, under the impression, due to false statements made by defendant, it was a duplicate of the first one. As against this testimony various witnesses swore plaintiff

had told them he had agreed to give defendant half of what the latter might be instrumental in obtaining from the estate, and there is other strong evidence to the same effect. The deceased Henry Feldman had devised all his property to his wife, Augusta Feldman. There was testimony to show this was understood by the heirs of the deceased, including plaintiff, and that the latter's real purpose in employing defendant was to have him get what he could of the estate by contesting or threatening to contest the will or otherwise. Defendant and a man named Waters, whom he employed to assist him, made five trips to Iowa about the business, talked with the widow, informed her the heirs were thinking of contesting the will, consulted attorneys and did other things looking to a contest. The widow asked them not to be too fast, and the testimony indicates defendant's influence induced her to leave a legacy to plaintiff of several thousand dollars; that on account of defendant's influence she changed her will two or three times, finally leaving one in favor of the heirs of her deceased husband; but there was evidence for plaintiff against those theories. It is not clear whether the contracts between plaintiff and defendant were made before plaintiff knew his namesake and uncle had left a will in favor of Augusta Feldman or after he had learned that fact. The inference might be drawn the contracts were made afterwards, in order to employ defendant to deal with the widow; or that after the date of the contracts, plaintiff learned of the will and verbally agreed the arrangement with defendant should continue, though it was not made originally on the supposition that said Feldman had devised his estate to his wife. So much for the facts relating to the original contracts between these parties. They fell into a dispute about defendant's demand under the contracts and agreed to submit their dispute to arbitrators. This agreement was put into a writing which was taken by plaintiff to an attorney, Judge Thompson, who examined

it and explained it to plaintiff and afterwards the latter signed it.    He admitted he went to the town of Gorin, in order to get the dispute between him and defendant submitted to arbitrators, and executed the submission after he had taken legal advice.   The submission recited the controversy between the parties about the settlement of the estates of Henry Feldman and Augusta Feldman, both of Van Buren county, Iowa, and both deceased; that whereas defendant held a contract between himself and plaintiff wherein the latter had agreed to give the former fifty per cent of all money collected, and of all notes and mortgages taken in settlement of said estate, for the services of defendant, and another contract for plaintiff to pay pro rata his part of the expense of collecting the estate, and whereas plaintiff wanted to rescind the first contract and claimed it allowed defendant too large a fee, and the latter insisted on his contract, therefore the parties agreed to submit to arbitrators their dispute regarding said contracts and all matters arising out of the same, both in law and equity, or otherwise pending between the parties; and agreed to abide by and faithfully perform the award of the arbitrators in the premises, and further agreed a judgment might be rendered by the circuit court of Scotland county on the award according to the statute in such cases made and provided.    The original contracts between the parties had been entered into in 1900 and the contract to submit their dispute to arbitrators was entered into August 8, 1903.    One arbitrator was appointed by each party, those two selected a third and all of them took and subscribed an oath faithfully to hear and determine the matters in controversy.   On the trial of the present cause each of the arbitrators gave testimony, which was not objected to, regarding the testimony given by plaintiff and his wife at the hearing before them.    They all swore plaintiff and his wife said the original contracts between plaintiff and defendant had reference to the estate of Augusta Feldman as well

as that of Henry Feldman, and were made for the purpose of employing defendant to look after plaintiff's interest in those estates. Plaintiff testified defendant swore falsely before the arbitrators that he (plaintiff) would not have gotten any of Augusta Feldman's estate but for defendant's efforts. The arbitrators made an award in writing, allowing defendant twenty-five per cent of the money and property accruing to plaintiff from Augusta Feldman's estate. This allowance included the expense defendant had been put to in making trips to Iowa to look after plaintiff's interest, which was due him under the first contract whereby plaintiff agreed to pay his pro rata part of the expense, as he admitted. The gist of this case is the alleged damage to plaintiff from defendant's having, prevented the executors of Augusta Feldman's estate from paying him his full interest in her estate, by notifying said executors defendant claimed part of what had been devised to plaintiff. It should be stated said executors paid plaintiff $2,000, but withheld $1,250, or thereabouts, because of notice from defendant of his claim. The court instructed the jury defendant did not have any interest in the legacy bequeathed to plaintiff by said Augusta Feldman, and if the jury believed the executors would have paid the full amount of the legacy to plaintiff but for the notice given by defendant, and further believed defendant's claim was fraudulent and he knew it to be, made it for the purpose of preventing plaintiff from being paid and to defraud plaintiff out of the legacy, the verdict should be in plaintiff's favor, and in assessing his damages he should be allowed for time and money actually expended in efforts to collect the legacy in consequence of the notice given by defendant. Instructions submitting the defense and counterclaim were presented by counsel for defendant and refused. No notice was taken of the counterclaim in the instructions, the jury were not directed to find regarding it and, in fact,

made no finding except one in favor of plaintiff, assessing his damages at $25.

GOODE, J. (after stating the facts).—We remember no case we have been called on to review more devoid of merit than this one.   Not a vestige of evidence was introduced which conduced to show defendant was answerable to plaintiff in damages.   The former had notified Mrs. Feldman's executors he claimed twenty-five per cent of the legacy left plaintiff, and this he had a perfect right to do after the award of the arbitrators. Yet the court left it to the jury to say whether or not he knew he had no claim, acted from a dishonest motive, with the intention to defraud plaintiff, and thereby subjected the latter to a loss on account of the executors being intimidated and refusing to pay the legacy in full.   We perceive no case for damages on any theory. The court below ignored the counterclaim based on the award, did not submit it to the jury, and the latter made no finding on it.   This alone would be fatal to the judgment on appeal.   [Winkleman v. Maddox, 119 Mo. App. 658.]

We do not intend to pass on the validity or conclusiveness of the award, because this matter has not been briefed.   The articles of submission, the proceedings by the arbitrators and their award, appear to be in due and statutory form.   In the light of the record before us and far as we are advised, we see no reason why the award could not be enforced, but as to this we decide nothing.   What we decide is that plaintiff established no case and the judgment in his favor will be reversed and the cause remanded.   All concur.